UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Caribbean Commercial Investment Bank Ltd.,<br><br>Debtor. | Chapter 15<br><br>Case No.: 16-12844 (SMB) |

### DECLARATION OF WILLIAM TACON IN SUPPORT OF (I) THE VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND (II) MOTION IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF

I, William Tacon, declare as follows:

1. I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion").

2. I have personal knowledge of the statements set forth in this Declaration or such statements are based upon my review of the books and records of the Caribbean Commercial Investment Bank Ltd. ("CCIB"), which books and records were kept in the regular course of CCIB's business and relied upon by CCIB's employees in conducting CCIB's banking business. Those books and records also included data compiled in the ordinary course of CCIB's banking business.

3. I am a Chartered Accountant and a Consultant with FTI Consulting (BVI) Limited based in Tortola, British Virgin Islands in its Caribbean Corporate Restructuring and Finance Department.

4. I have over 35 years of experience in restructuring and insolvency, including approximately 12 years in the Caribbean area. Previously, I was an Insolvency and

Restructuring Partner at Ernst & Young LLP in the United Kingdom until September 2004, then Managing Partner of Zolfo Cooper (BVI) Limited from 2004 until 2012 and relocated back to England in July 2012. I have held appointments as liquidator of many companies in the British Virgin Islands and throughout the Caribbean, including several other cases in Anguilla. I also have significant experience in cross-border insolvency matters involving parties in the U.S., U.K., France, Switzerland, Russia, the Commonwealth of Independent States, Hong Kong, People's Republic of China, and Singapore. Until recently, I was a liquidator of two of the largest British Virgin Islands registered feeder funds into Bernard L. Madoff Investment Securities LLC.

### A.   CCIB Generally

5.   CCIB is a commercial bank incorporated and licensed in Anguilla.

6.   CCIB's headquarters are located at 2 St. Mary's Street, The Valley, Anguilla.

7.   Caribbean Commercial Bank (Anguilla) Ltd. ("CCB") is the sole shareholder of CCIB. CCB is incorporated pursuant to the laws of Anguilla.

8.   CCIB does not have any employees. When input is required, it is provided by employees of National Commercial Bank of Anguilla Ltd ("NCBA"), the successor to CCB (as discussed below).

### B.   My Appointment as Administrator and Liquidator of CCIB

9.   CCIB was regulated by the Financial Services Commission in Anguilla ("FSC").

10.   In light of developments with the conservatorship of CCB (discussed below), the FSC found it was no longer appropriate to maintain the status quo, and determined that the appointment of an independent representative would best protect the rights of CCIB and its creditors.

11. Subsequently, upon the application of the FSC and by an Order dated February 22, 2016 (the "First Administration Order"),[1] the Eastern Caribbean Supreme Court in the High Court of Justice Anguilla Circuit (the "High Court") placed the operations of CCIB and another offshore bank, the National Bank of Anguilla (Private Banking & Trust) Ltd. ("PBT" and together with CCIB, the "Offshore Banks") under administration pursuant to section 31(2)(b) of the Financial Services Commission Act (with respect to CCIB, the "Anguillian Proceeding").

12. By the First Administration Order, the High Court appointed me as the Administrator of the Offshore Banks (the "Administrator"). See First Administration Order at ¶ 2.

13. As the court-appointed Administrator of CCIB, I have complete control of the management of CCIB pursuant to section 31(2)(b) of the Financial Services Commission Act, R.S.A. c. F28 (the "FSC Act"). See First Administration Order at ¶ 3.

14. The High Court specifically authorized me, as an officer of the High Court, "to act in Anguilla or any foreign jurisdiction where he believes assets and property of the Offshore Banks may be Situate . . . [to] commence [or] continue . . . without further Order of this Honorable Court any proceeding or action . . . in a foreign jurisdiction for the purpose of fulfilling his duties and obligations under this Order." See First Administration Order at ¶ 8.

15. The High Court further authorized me "to seek the assistance of any Court of a foreign jurisdiction in the carrying out of the provisions of this Order . . ., including without limitation, an order of examination of persons believed to be knowledgeable of the affairs, assets and property of the Offshore Banks and to assist the Administrator in the recovery of the assets and property of the Offshore Banks." See First Administration Order at ¶ 8.

---

[1] A true and correct copy of the First Administration Order is attached as Exhibit A to the Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

16. The First Administration Order also authorized me, as Administrator, to "sell, charge or otherwise dispose of the assets of the Offshore Banks." *See* First Administration Order at ¶ 13(c).

17. The First Administration Order requires me to report to the High Court regarding the winding up of the Offshore Banks or of any part of the business of the Offshore Banks. *See* First Administration Order at ¶ 5(c).

18. In addition, the High Court entered an Order dated May 19, 2016 (the "Second Administration Order").[2] The Second Administration Order expressly conferred upon me the powers of a liquidator under the Companies Act, as permitted by section 31(3) of the FSC Act. *See* Second Administration Order at ¶ 1.

### C. My Notices to CCIB's Creditors

19. I provided notice, by e-mail, of the Anguillian Proceeding and my appointment as Administrator to all known CCIB depositors on April 13, 2016.

20. In addition, on February 22, 2016, the FSC issued a press release on its website, providing, in relevant part, as follows:

> *Administrator appointed for National Bank of Anguilla (Private Banking & Trust LTD and Caribbean Commercial Investment Bank Ltd.*
>
> The High Court of Justice Anguilla Circuit has ordered the appointment of Mr. William Tacon, Chartered Accountant, of FTI Consulting, Tortola, British Virgin Islands as Administrator of the National Bank of Anguilla (Private Banking & Trust) Ltd (NBAPBT) and the Caribbean Commercial Investment Bank Ltd (CCIB).
>
> The Order was made on Monday, 22 February 2016 following the application of the Financial Services Commission (FSC) to the Eastern Caribbean Supreme Court for the appointment of an Administrator to manage the business of NBAPBT and CCIB. The FSC sought the Order to meet its regulatory obligations under the Trust Companies and Offshore

---

[2] A true and correct copy of the Second Administration Order is attached as Exhibit B to the Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

> Banking Act, R.S.A. c.T60 (TCOBA) and the Financial Services Commission Act, R.S.A. c.F28. . . .
>
> Mr Tacon, as Administrator, has therefore taken control of all operations of NBAPBT and CCIB and will manage their on-going business. He is expected to work closely with the Eastern Caribbean Central Bank (ECCB) pre-resolution and in the eventual resolution of the parent banks. The ECCB fully supports the appointment of Mr. Tacon as Administrator to manage the business of NBAPBT and CCIB. . . .

*See* http://www.fsc.org.ai/story.php?id=4&ID=6704.

21. I also provided written updates to all known depositors on April 19 and 27, May 6, June 16, and July 21, 2016, to update them regarding my efforts as Administrator. In addition, such updates have been posted to an online creditors' portal.

22. I am not aware of any significant or material creditors of CCIB other than its depositors.

**D.    CCIB's Net Transfer of Approximately $5.9 Million to CCB**

23. Between August 12, 2013, and April 22, 2016, the affairs of CCB were subject to the control of the Eastern Caribbean Central Bank (the "ECCB"), which was the regulator of CCB, through a process of conservatorship pursuant to powers conferred on the ECCB by the Eastern Caribbean Central Bank Agreement Act.

24. On April 22, 2016, the ECCB appointed a receiver to CCB. At 4:00 p.m. on April 22, 2016, CCB ceased banking operations in Anguilla. According to a press release issued by the ECCB, CCB's banking operations were transferred on April 22, 2016, to a newly established bank, National Commercial Bank of Anguilla ("NCBA"), which apparently is wholly-owned by the Government of Anguilla.

25. Between August 12, 2013 and March 24, 2016 (the "Relevant Period"), CCIB's affairs were conducted in accordance with instructions given by, and under the management control of, individuals appointed by the ECCB as conservators of CCB. Those individuals were

Messrs. Martin Dinning, Hudson Carr, and Shawn Williams (collectively, the "Conservator Directors"). All of the Conservator Directors were based in Anguilla during their periods of office, although they were not residents or citizens of Anguilla. All Conservator Directors appear to have operated under the close control or supervision of the ECCB.

26. On or about August 15, 2013, the ECCB or Mr. Dinning, as Conservator Director acting on behalf of CCB, dismissed the appointed directors of CCIB. From August 15, 2013, until February 22, 2016, CCIB had no *de jure* directors and therefore acted solely in accordance with the instructions of, and under the management control of, the Conservator Directors acting from time to time.

27. From February 22, 2016, until March 24, 2016, in accordance with the terms of my appointment as Administrator, I sub-contracted the management of the day-to-day operations of CCIB to CCB (by and through Mr. Williams, as Conservator Director of CCB).

28. Throughout the Relevant Period, based upon my experience as a Chartered Accountant and my review of CCIB's financial statements provided to me by the FSC and those responsible for managing the business of CCIB, I believe that CCIB was insolvent on a balance sheet test. It appears that CCIB also may have been unable to pay its debts as they fell due, at least during the latter part of the Relevant Period and thereafter. Based upon my review of financial statements for CCB and my understanding of its financial position, I also believe that CCB was illiquid, dependent upon CCIB for its liquidity (at least in part), and unable to settle the large amount CCB owed to CCIB. Based on such analysis, and my experience, I believe that CCB was insolvent, at least during the latter part of the Relevant Period.

29. Notwithstanding the insolvency of CCB during the Relevant Period, the Conservator Directors (acting on behalf of CCIB) procured or permitted the payment to CCB of

(i) all monies received by CCIB from depositors denominated in U.S. Dollars and (ii) the proceeds of all assets of CCIB realized or collected during the Relevant Period, also denominated in U.S. Dollars (together, the "Funds").

30. I believe the Funds were deposited into one or more bank accounts in the U.S. at Bank of America and that a portion of such Funds may still remain in such accounts.

31. At the close of business on April 25, 2016, at my direction, CCIB ceased accepting new deposits as I determined that trading should cease immediately. Between the time of my appointment as Administrator and the date upon which I caused CCIB to cease accepting deposits, CCIB was accepting deposits.

32. The gross amount of the Funds paid to or collected by CCB during the Relevant Period was US$26,983,662.05. After returned funds, a net amount of US$5,927,991.11 remained owing to CCIB.

33. None of CCB, NCBA, the ECCB, and the Conservator Directors to whom I have reached out for information and explanations relating to the transfer of the Funds to CCB (while it was insolvent) has been forthcoming with answers. In addition, despite repeated requests, I have received no indication that CCB or NCBA will repay any of the net Funds outstanding. My enquiries indicate that no provision has been made for NCBA to make repayment and CCB is in receivership and clearly recognized as being insolvent.

34. Based on my investigations, including discussions with representatives of CCB and NCBA, I believe that all of the Funds were received into one or more bank accounts in the United States (and in this District) and there is a strong possibility that some money will still be held in those accounts. I further believe that such Funds are held in constructive trust for CCIB's benefit because CCIB did not receive reasonably equivalent value in exchange for the transfer of

the Funds and CCIB was insolvent (or was rendered insolvent) by the transfer of the Funds to CCB. I have commenced legal proceedings in Anguilla against NCBA for the return of this money and sought leave of the Court to commence an identical proceeding against CCB. (Under the terms of the Banking Act 2015, such consent is required before proceedings can commence against CCB).

### E.    The Chapter 15 Case

35.    By filing the Verified Petition and the Motion, I seek the assistance of the U.S. courts in my efforts to locate and recover CCIB's assets in furtherance of my duties as Administrator of CCIB to liquidate CCIB's assets and repay its creditors according to their priorities. I anticipate that calling for claims and subsequently admitting them to rank for dividend will take place in Anguilla as part of the Anguillian Proceeding and my liquidation of CCIB's assets.

36.    I have reviewed Exhibits A and B to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*. The exhibits are true and correct copies of the original documents.

### F.    The Retainer

37.    Prior to filing the Verified Petition, I caused a retainer in the amount of Seventy Five Thousand Dollars ($75,000) to be wire transferred to an account in the name of Reed Smith LLP in New York, New York. Reed Smith LLP holds such funds as a security retainer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: October 6, 2016

By: _____
William Tacon, as Administrator of
Caribbean Commercial Investment Bank Ltd.