REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (*pro hac vice* pending)
599 Lexington Avenue
New York, NY  10022-7650
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email: jmccarroll@reedsmith.com
        jsiev@reedsmith.com
        kgwynne@reedsmith.com

*Counsel for William Tacon, in his capacity as*
*Administrator and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Caribbean Commercial Investment Bank Ltd., | Case No.:  16-12844 (SMB) |
| Debtor. | |

## MOTION IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF

William Tacon, in his capacity as the Administrator and the duly-authorized authorized foreign representative (the "Petitioner" or "Administrator") of the Caribbean Commercial Investment Bank Ltd. ("CCIB") in respect of an administration proceeding (the "Anguillian Proceeding") pending before the Eastern Caribbean Supreme Court in the High Court of Justice Anguilla Circuit (the "High Court") pursuant to section 31(2)(b) of the Financial Services Commission Act, R.S.A. c. F28 ("FSC Act"), by and through his United States counsel, Reed Smith LLP, respectfully submits this Motion in Support of Verified Petition for Recognition of Foreign Proceeding and for Related Relief (the "Motion", and together with the Verified Petition

for Recognition of the Foreign Proceeding,[1] the "Verified Petition") seeking, among other things, entry of the proposed order attached as Exhibit A (the "Proposed Order") (i) recognizing the Anguillian Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) recognizing the Petitioner as CCIB's "foreign representative" as defined in section 101(24) of the Bankruptcy Code; and (iii) granting such other relief as is appropriate.

In support of the Verified Petition, the Petitioner relies on (i) the *Declaration of William Tacon in Support of the Verified Petition* (the "Tacon Declaration") and (ii) the *Declaration of Eustella Fontaine in Support of the Verified Petition* (the "Fontaine Declaration") filed concurrently herewith and incorporated as if fully set forth herein. In addition, the Petitioner respectfully represents as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Petition pursuant to sections 157 and 1334 of title 28 of the United States Code and the Amended Standing Order of Reference, dated January 31, 2012, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.).

2.      This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code. *See* 28 U.S.C. § 157(b)(2)(P) ("Core proceedings include, but are not limited to . . . recognition of foreign proceedings and other matters under chapter 15 of title 11").

3.      Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United States Code, which provides that "[a] case under chapter 15 of title 11 may be commenced in the district court of the United States for the district . . . in which the debtor has its principal place of

---

[1] The Verified Petition for Recognition of Foreign Proceeding includes the following attachments: *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(A)(4) of the Federal Rules of Bankruptcy Procedure* and the *Corporate Ownership Statement as Required by Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 and Local Bankruptcy Rule 1007-3.*

business or principal assets in the United States." 28 U.S.C. § 1410(1). As discussed further below, CCIB's principal assets in the United States are located within the Southern District of New York.

## FACTUAL BACKGROUND

4.     Contemporaneously with the filing of this Motion, the Petitioner filed the Verified Petition for relief under Chapter 15 of the Bankruptcy Code.

### A.     Caribbean Commercial Investment Bank Ltd.

5.     Contemporaneously with the filing of this Motion, the Petitioner filed the Verified Petition for relief under Chapter 15 of the Bankruptcy Code.

6.     CCIB is a commercial bank incorporated and licensed in Anguilla pursuant to the Trust Companies and Offshore Banking Act 2000, R.S.A. c. T60. *See* Tacon Declaration at ¶ 5.

7.     Anguillian law requires that all banks operating from within Anguilla and conducting banking business in currencies other than Eastern Caribbean Dollars with persons or entities who are not citizens of or resident in Anguilla shall apply for and obtain an "Offshore Banking License" to conduct such business. *See* Fontaine Declaration at ¶ 10. CCIB was incorporated on January 26, 2001 and was established to provide offshore banking and trust services to clients worldwide. CCIB was regulated by the Financial Services Commission (the "FSC") in Anguilla. *See* Fontaine Declaration at ¶ 10; Tacon Declaration at ¶ 9.

8.     CCIB's headquarters are located at 2 St. Mary's Street, The Valley, Anguilla. *See* Tacon Declaration at ¶ 6.

9.     At the close of business on April 25, 2016, CCIB ceased accepting new deposits. *See* Tacon Declaration at ¶ 31.

**B.      CCIB's Net Transfer of Approximately $5.9 Million to CCB**

10.      The Caribbean Commercial Bank (Anguilla) Ltd. ("CCB") is the sole shareholder of CCIB.  *See* Tacon Declaration at ¶ 7.  CCB is incorporated pursuant to the laws of Anguilla. *See* Tacon Declaration at ¶ 7.

11.      On August 12, 2013, the Eastern Caribbean Central Bank (the "ECCB") placed CCB into a conservatorship pursuant to powers conferred on the ECCB by the Eastern Caribbean Central Bank Agreement (as amended, the "ECCB Agreement").[2]  See *Gazette* Vol. 40, No. 11; Fontaine Declaration at ¶ 8.

12.      Between August 12, 2013, and April 22, 2016, the affairs of CCB were subject to the control of the ECCB conservatorship.  *See* Tacon Declaration at ¶ 23.

13.      Between August 12, 2013 and March 24, 2016 (the "Relevant Period"), CCIB's affairs were conducted in accordance with instructions given by, and under the management control of, individuals appointed by the ECCB as conservators of CCB.  Those individuals were Messrs. Martin Dinning, Hudson Carr, and Shawn Williams (collectively, the "Conservator Directors").  *See* Tacon Declaration at ¶ 25.

14.      On or about August 15, 2013, the ECCB or Mr. Dinning, as Conservator Director acting on behalf of CCB, dismissed the appointed directors of CCIB.  *See* Tacon Declaration at ¶ 26.  From August 15, 2013, until February 22, 2016, CCIB had no *de jure* directors and therefore acted solely in accordance with the instructions of, and under the management control of, the Conservator Directors acting from time to time.  *See* Tacon Declaration at ¶ 26.

---

[2] The Governments of Anguilla, Antigua and Barbuda, the Commonwealth of Dominica, Grenada, Montserrat, Saint Christopher and Nevis, Saint Lucia, and Saint Vincent and the Grenadines entered into the ECCB Agreement. *See* R.S.A. c E5.  Part II.A of the ECCB Agreement gives the ECCB the emergency power to take control of a financial institution when, among other reasons, the ECCB is of the opinion that "(a) that the interests of depositors or creditors of a financial institution are threatened," "(b) that a financial institution is likely to become unable to meet its obligations or is about to suspend or has suspended payment to its creditors or depositors;" or "(c) that a financial institution is not maintaining high standards of financial probity or sound business practices[.]"

15.    From February 22, 2016, until March 24, 2016, the Petitioner (in accordance with the terms of his appointment) sub-contracted the management of the day-to-day operations of CCIB to CCB (by and through Mr. Williams, as Conservator Director of CCB).  *See* Tacon Declaration at ¶ 27.

16.    Based on CCB's financial statements and the Administrator's understanding of CCB's financial position, the Administrator believes that CCB was illiquid, dependent upon CCIB for liquidity (at least in part), and unable to settle the large amount that CCB owed to CCIB.  *See* Tacon Declaration at ¶ 28.  Based on such analysis, and his experience, the Administrator considered CCB to be insolvent at least during the latter part of the Relevant Period. *See* Tacon Declaration at ¶ 28.

17.    Notwithstanding the insolvency and illiquidity of CCB during the Relevant Period, the Conservator Directors (acting on behalf of CCIB) procured or permitted the payment to CCB of (i) all monies received by CCIB from depositors denominated in U.S. Dollars and (ii) the proceeds of all assets of CCIB realized or collected during the Relevant Period, also denominated in U.S. Dollars (together, the "Funds").  *See* Tacon Declaration at ¶ 29.

18.    The gross amount of the Funds paid to or collected by CCB during the Relevant Period was US$26,983,662.05.  After returned funds, a net amount of US$5,927,991.11 remains owing to CCIB.  *See* Tacon Declaration at ¶ 32.

19.    On April 22, 2016, the ECCB appointed a receiver for CCB pursuant to section 137 of the Banking Act, No. 6 of 2015.  *See* Fontaine Declaration at ¶ 9; Tacon Declaration at ¶ 24.  At 4:00 p.m. on April 22, 2016, CCB ceased banking operations in Anguilla.  According to a press release issued by the ECCB, CCB's banking operations were transferred on April 22, 2016, to a newly established bank, the National Commercial Bank of

- 5 -

Anguilla Ltd ("NCBA").  *See*

http://www.Anguillianews.com/enews/index.php/permalink/5489.html; Fontaine Declaration at

¶ 9; Tacon Declaration at ¶ 24.

    20.    NCBA is wholly-owned by the Government of Anguilla.  *See* Fontaine

Declaration at ¶ 9; Tacon Declaration at ¶ 24.

    **C.**    **The Anguillian FSC Act and Companies Act**

    21.    Section 31, entitled "Protection Order," of the FSC Act provides, in relevant part,

as follows:

> (2) On an application made under subsection (1), the Court may make such order as it considers necessary *to protect or preserve the business or property of the licensee, or the interests of its customers, creditors or the public* including—
>
>> (a) an order preventing the licensee or any other person from transferring, disposing of or otherwise dealing with property belonging to him or in his custody or control;
>>
>> (b) an *order appointing an administrator* to take over and manage the financial services business then carried on by the licensee or carried on by him immediately before the revocation or suspension of the licence, as the case may be;
>>
>> (c) in the case of a company, an order that the licensee be wound up by the Court or subject to the supervision of the Court under the Companies Act; and
>>
>> (d) an order granting the Commission a search warrant.
>
> (3) Without limiting paragraph (2)(b), *an order made under that paragraph shall specify the powers of an administrator, which may include the powers of* a licensee under this Act or of *a liquidator under the Companies Act* and may—
>
>> (a) require an administrator to provide security to the satisfaction of the Court;
>>
>> (b) fix and provide for the remuneration of the administrator; [and]
>>
>> (c) require such persons as it considers necessary to appear before the Court for the purposes of giving information or producing records concerning the licensee or the business carried on by the licensee.

(4) An order made under paragraph (2)(b) shall make provision for reports to be submitted by the administrator to the Court and to the Commission.

*See* FSC Act, R.S.A. c. F28 at § 31(2)-(4) (emphasis added); Fontaine Declaration at ¶ 11.

### D.    Appointment of Petitioner as Administrator and Liquidator of CCIB

22.    In light of developments with the conservatorship of CCB (discussed above), the FSC found it was no longer appropriate to maintain the status quo, and determined that the appointment of an independent representative would best protect the rights of CCIB and its creditors. *See* Tacon Declaration at ¶ 10.

23.    Upon FSC's application, and by an Order dated February 22, 2016 (the "First Administration Order"), the High Court placed the operations of CCIB and another offshore bank, the National Bank of Anguilla (Private Banking & Trust) Ltd. ("PBT" and together with CCIB, the "Offshore Banks") under administration pursuant to section 31(2)(b) of the FSC Act. *See* First Administration Order at ¶ 1; Tacon Declaration at ¶ 11; Fontaine Declaration at ¶ 12.

24.    A notarized, court-stamped copy of the First Administration Order is attached as Exhibit A to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* (which is attached to the Chapter 15 Petition).

25.    By the First Administration Order, the High Court appointed William Tacon of FTI Consulting as the Administrator of the Offshore Banks. *See* First Administration Order at ¶ 2; Tacon Declaration at ¶ 12; Fontaine Declaration at ¶ 13. As Administrator of the Offshore Banks, the Petitioner has complete control of the management of CCIB pursuant to section 31(2)(b) of the FSC Act. *See* First Administration Order at ¶ 3; Tacon Declaration at ¶ 13; Fontaine Declaration at ¶ 14.

26.    The High Court specifically authorized the Petitioner, as an officer of the High Court, "to act in Anguilla or any foreign jurisdiction where he believes assets and property of the Offshore Banks may be Situate . . . [to] commence [or] continue . . . without further Order of this Honorable Court any proceeding or action . . . in a foreign jurisdiction for the purpose of fulfilling his duties and obligations under this Order." *See* First Administration Order at ¶ 8; Tacon Declaration at ¶ 14.    The High Court further authorized the Petitioner to "to seek the assistance of any Court of a foreign jurisdiction in the carrying out of the provisions of this Order including without limitation, an order of examination of persons believed to be knowledgeable of the affairs, assets and property of the Offshore Banks and to assist the Administrator in the recovery of the assets and property of the Offshore Banks." *See* First Administration Order at ¶ 8; Tacon Declaration at ¶ 15.

27.    The First Administration Order also authorizes the Administrator, among other things, "to sell, charge or otherwise dispose of the assets of the Offshore Banks." *See* First Administration Order at ¶ 13(c); Tacon Declaration at ¶ 16.

28.    The First Administration Order requires the Administrator to report to the High Court regarding the winding up of the Offshore Banks or of any part of the business of the Offshore Banks.  *See* First Administration Order at ¶ 5(c); Tacon Declaration at ¶ 17.

29.    The High Court also entered an Order dated May 19, 2016 (the "Second Administration Order" and together with the First Administration Order, the "Administration Orders").  The Second Administration Order expressly conferred upon the Administrator the powers of a liquidator under the Companies Act, as permitted by section 31(3) of the FSC Act. *See* Second Administration Order at ¶ 1; Tacon Declaration at ¶ 18; Fontaine Declaration at ¶ 16;

30.    A notarized, court-stamped copy of the Second Administration Order is attached as Exhibit B to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* (which is attached to the Chapter 15 Petition).

31.    The Companies Act, R.S.A. c C65, at § 222(1), entitled "Powers of liquidator," provides, in part, as follows:

> 222. (1) A liquidator may—
>
> (a) retain attorneys-at-law, accountants, engineers, appraisers and other professional advisers;
>
> (b) bring, defend or take part in any civil, criminal or administrative action or proceeding in the name and on behalf of the company;
>
> (c) carry on the business of the company as required for an orderly liquidation;
>
> (d) sell by public auction or private sale any property of the company;
>
> (e) do all acts and execute any documents in the name and on behalf of the company;
>
> (f) borrow money on the security of the property of the company;
>
> (g) settle or compromise any claims by or against the company;
>
> (h) make financial provision in respect of the custody of the documents and records of the company after its dissolution; and
>
> (i) do all other things necessary for the liquidation of the company and the distribution of its property.

*Id.*; *see* Fontaine Declaration at ¶ 17.

32.    Therefore, the Administrator, with the powers of a liquidator, has the authority to take any action necessary to liquidate CCIB's assets. *See* Fontaine Declaration at ¶ 18.

33.    The High Court supervises, and has ultimate control of, the administration, reorganization, or liquidation of CCIB. *See* Fontaine Declaration at ¶ 19.

34.    The Administrator will be responsible for administering claims in a liquidation of CCIB. *See* Companies Act, R.S.A. c C65, at § 221(b)(iii) (liquidator must give notice "requiring any person having a claim against the company, whether liquidated, unliquidated, future or contingent, to present particulars of the claim in writing to the liquidator not later than 2 months after the first publication of the notice"); Fontaine Declaration at ¶ 20.

**E.    Notice to CCIB's Creditors**

35.    The Petitioner provided notice, by e-mail, of the Anguillian Proceeding and Mr. Tacon's appointment as Administrator to all known CCIB depositors on April 13, 2016. *See* Tacon Declaration at ¶ 19.

36.    In addition, on February 22, 2016, the FSC issued a press release on its website, providing, in relevant part, as follows:

> *Administrator appointed for National Bank of Anguilla (Private Banking & Trust LTD and Caribbean Commercial Investment Bank Ltd.*
>
> The High Court of Justice Anguilla Circuit has ordered the appointment of Mr. William Tacon, Chartered Accountant, of FTI Consulting, Tortola, British Virgin Islands as Administrator of the National Bank of Anguilla (Private Banking & Trust) Ltd (NBAPBT) and the Caribbean Commercial Investment Bank Ltd (CCIB).
>
> The Order was made on Monday, 22 February 2016 following the application of the Financial Services Commission (FSC) to the Eastern Caribbean Supreme Court for the appointment of an Administrator to manage the business of NBAPBT and CCIB. The FSC sought the Order to meet its regulatory obligations under the Trust Companies and Offshore Banking Act, R.S.A. c.T60 (TCOBA) and the Financial Services Commission Act, R.S.A. c.F28. . . .
>
> Mr Tacon, as Administrator, has therefore taken control of all operations of NBAPBT and CCIB and will manage their on-going business. He is expected to work closely with the Eastern Caribbean Central Bank (ECCB) pre-resolution and in the eventual resolution of the parent banks.

The ECCB fully supports the appointment of Mr. Tacon as Administrator
to manage the business of NBAPBT and CCIB. . . .

See www.fsc.org.ai/story.php?id=4&ID=6704; Tacon Declaration at ¶ 20.

37.    In addition, the Administrator has provided written updates to all known
depositors on April 19 and 27, May 6, June 16, and July 21, 2016, to update them regarding his
efforts as Administrator.   In addition, such updates have been posted to an online creditors'
portal.  See Tacon Declaration at ¶ 21.

### RELIEF REQUESTED[3]

38.    The Petitioner respectfully requests that this Court enter an order, substantially
in the form of the attached Proposed Order, (i) recognizing the Anguillian Proceeding as a
"foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code;
(ii) recognizing the Petitioner as CCIB's "foreign representative" as defined in section 101(24)
of the Bankruptcy Code; and (iii) granting such further relief as is appropriate.[4]

### BASES FOR RELIEF

39.    Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks
assistance in a U.S. court.  See 11 U.S.C. § 1501(b)(1). The stated objectives of Chapter 15
include: (i) cooperation between U.S. courts and foreign courts in cross-border insolvency cases,
(ii) "legal certainty for trade and investment," (iii) protection of all interested parties in a cross-
border insolvency, and (iv) "maximization of the value of the debtor's assets." 11 U.S.C.
§ 1501(a); see In re Oversight & Control Comm'n. of Avánzit, S.A., 385 B.R. 525, 534 (Bankr.
S.D.N.Y. 2008). The Petitioner respectfully submits that each of these goals can best be achieved

---

[3] The Petitioner reserves its right to return to this Court to obtain recognition or enforcement of any orders entered
by the High Court in the Anguillian Proceeding or to seek any other relief available to the Petitioner under Chapter
15 of the Bankruptcy Code.

[4] The standards, procedures and limitations applicable to an injunction apply to the relief set forth in section
1521(a)(1), (2), (3), and (6).  See 11 U.S.C. § 1521(e).

by recognizing that Anguilla is CCIB's center of main interests ("COMI") and thus, that the Anguillian Proceeding is a "foreign main proceeding."

### A. CCIB Is Eligible To Be a "Debtor" under Chapter 15 of the Bankruptcy Code

40.    CCIB is an entity eligible to be a "debtor" in a Chapter 15 case. For the purposes of a case under Chapter 15, "debtor" means an entity that is the subject of a "foreign proceeding." *See* 11 U.S.C. § 1502(1).[5]

41.    The Second Circuit has held that a Chapter 15 debtor must satisfy the eligibility requirements of section 109(a) of the Bankruptcy Code. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 248-49 (2d Cir. 2013). Bankruptcy Code section 109(a) provides that "[n]otwithstanding any other provision of this section, only a *person* that resides or has domicile, a place of business, or *property in the United States*, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a) (emphasis added).

42.    CCIB is a "person," which is defined as including an "individual, partnership, and corporation", but excludes a "government unit" except to the extent, *inter alia*, it "acquires an asset" as a "receiver or liquidating agent". *See* 11 U.S.C. § 101(41)(A)(ii).

43.    CCIB is a "person" because it is a "corporation"[6] and is not a "governmental unit," which is defined, in part, as an "instrumentality" of a "foreign state" or other foreign or domestic government. *See* 11 U.S.C. § 101(27).[7]

---

[5] A "foreign proceeding" is a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purposes of a reorganization or liquidation." 11 U.S.C. § 101(23). As discussed further *infra*, the Anguillian Proceeding before the High Court is a "foreign proceeding" because it is a collective judicial proceeding relating to CCIB's insolvency in which its assets and affairs are subject to the High Court's control and supervision for purposes of reorganization or liquidation.

[6] A "corporation" includes, *inter alia*, an "association having a power or privilege that a private corporation, but not an individual or partnership, possess." *See* 11 U.S.C. § 101(9)(a)(1).

44.    CCIB's deposit of a $75,000 retainer in Reed Smith's New York bank account

prior to the filing of the Verified Petition[8] fulfills the "property" requirement in section 109(a).

*See In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82, 84 (Bankr. S.D.N.Y. 2015) (holding cash

in client trust account maintained by the debtor's U.S. counsel and the presence of an indenture

clause expressly providing for New York law and New York choice of forum satisfied section

109(a) requirement); *In re Octaviar Admin Pty Ltd.*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y.

2014) (holding cash in client trust fund maintained by the foreign representatives' U.S. counsel

satisfied the section 109(a) requirement). *See In re Globo Comunicacoes e Participacoes S.A.*,

317 B.R. 235, 249 (Bankr. S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor

under section 109, courts have required only nominal amounts of property to be located in the

United States, and have noted that there is 'virtually no formal barrier' to having federal courts

adjudicate foreign debtors' bankruptcy proceedings."); *In re Paper I Partners, L.P.*, 283 B.R.

661, 674 (Bankr. S.D.N.Y. 2002) ("[Section 109] does not appear to be vague or ambiguous, and

it seems to have such a plain meaning as to leave the Court no discretion to consider whether it

was the intent of Congress to permit someone to obtain a bankruptcy discharge solely on the

basis of having a dollar, a dime or a peppercorn located in the United States") (quoting *In re*

*McTague*, 198 B.R. 428, 432 (Bankr. W.D.N.Y. 1996)).

---

[7] "Instrumentality" is not defined in the Bankruptcy Code. "The legislative history of § 101(27) instructs that 'department, agency, or instrumentality' does not include entities that owe their existence to state action such as the granting of a charter or a license but that have no other connection with a State or local government or the Federal Government. The relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function." In *In re Nortel Networks, Inc.*, 669 F.3d 128, 138 (3d Cir. 2011) (citations and internal quotations omitted) (analyzing the term "governmental unit" in connection with the police powers exception in section 362(b)(4)). CCIB is not an "instrumentality" of Anguilla. *See In re Irish Bank Resolution Corp. Ltd.*, No. 13-12159, 2014 WL 9953792, at *11 (Bankr. D. Del. Apr. 30, 2014), *aff'd*, 538 B.R. 692 (D. Del. 2015) ("Here, although [Irish Bank Resolution Corp.] was created by the Irish government, the Foreign Representatives are private parties responsible for administering IBRC's assets and ensuring that the assets' value is maximized. Furthermore, IBRC was funded and created when Anglo (a private limited company) and INBS were merged. Although IBRC is state-owned, it is standing in the shoes of a private party charged with liquidating the assets for distribution to creditors.").

[8] *See* Tacon Declaration at ¶ 37.

45.    Moreover, the Petitioner believes that there is a strong possibility that some of *its* Funds are held in constructive trust for its benefit in bank accounts in the United States (and in this District).  *See* Tacon Declaration at ¶¶ 27-34.  CCIB's causes of action to recover such property also have a situs in the United States (and in this District).  *See Berau Capital*, 540 B.R. at 82 (noting that "cases have identified bank accounts, attorney retainers deposited in New York, or causes of action owned by the foreign debtor with a situs in New York, as satisfying the 'property in the United States' eligibility requirement"); *Octaviar*, 511 B.R. at 372 (causes of action against defendants located in the U.S. involving allegations that certain funds were wrongfully transferred to such defendants constituted "property" in the U.S.).

46.    Therefore, CCIB is a "person" with "property" in the U.S. as required section 109(a) of the Bankruptcy Code.

47.    Section 1501(c)(1) of the Bankruptcy Code provides that Chapter 15 is not available to "an entity, other than a foreign insurance company, identified by exclusions in section 109(b)."  *See* 11 U.S.C. § 1501(c)(1).  CCIB does not fall within any of the categories of entities excluded from Chapter 15 eligibility under section 109(b).

48.    Section 109(b)(3)(B) identifies by exclusion a "foreign bank . . . that has a branch or agency (as defined in section 1(b) of the International Banking Act of 1978) in the United States."  *See* 11 U.S.C. § 109(b)(3)(B).  Accordingly, a foreign bank may be a debtor in chapter so long as the foreign bank does not have a branch or agency in the United States.

49.    In *In re The Irish Bank Resolution Corp. Ltd.*, 538 B.R. 692, 696-97 (D. Del. 2015), the district court concluded that a foreign bank was eligible for Chapter 15 relief so long as the foreign bank did not have a branch or agency in the U.S. as of the date of the Chapter 15 filing (and notwithstanding that the foreign bank previously had a branch in the U.S.).  *See In re*

- 14 -

*Kaupthing Bank hf.*, No. 08-14789 (MG) (Bankr. S.D.N.Y. Dec. 1, 2008) (granting provisional relief to foreign debtor bank); *see also In re Maple Bank GmbH*, No. 16-10336 (Bankr. S.D.N.Y.) (Chapter 15 petition filed on February 15, 2016, recognition order entered on March 11, 2016); *In re Caledonian Bank Ltd.,* No. 15-10324 (Bankr. S.D.N.Y.) (Chapter 15 petition filed on February 16, 2015, recognition order entered on March 17, 2015).

50.    Therefore, CCIB is eligible for relief as a "debtor" under Chapter 15 of the Bankruptcy Code.

**B.    Recognition of the Anguillian Proceeding as a "Foreign Main Proceeding" and of the Petitioner as CCIB's "Foreign Representative" Is Appropriate.**

51.    Section 1517 of the Bankruptcy Code provides that, after notice and hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main (or nonmain) proceeding if (i) such foreign proceeding is a foreign main (or nonmain) proceeding within the meaning of section 1502 of the Bankruptcy Code, (ii) the foreign representative applying for recognition is a person or body and (iii) the petition meets the requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a); *see also In re Overnight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).  As explained below, the Anguillian Proceeding, CCIB, and its Verified Petition satisfy all of the foregoing requirements.

**1.    The Anguillian Proceeding Is a "Foreign Proceeding"**

52.    The Anguillian Proceeding is a "foreign main proceeding" and, as such, satisfies the first condition for entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.  As an initial matter, the Anguillian Proceeding falls within the general definition of "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code, which states as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim

> proceeding, under a law relating to insolvency or adjustment of debt in
> which proceeding the assets and affairs of the debtor are subject to control
> or supervision by a foreign court, for the purpose of reorganization or
> liquidation.

11 U.S.C. § 101(23).

53.    Section 101(23) of the Bankruptcy Code requires that a "foreign proceeding"
(i) be a collective judicial or administrative proceeding relating to insolvency or adjustment of
debt, (ii) pending in a foreign country, (iii) under the supervision of a foreign court, and (iv) for
the purpose of reorganizing or liquidating the assets and affairs of the debtor. *See id.*

54.    The Anguillian Proceeding is a "collective" judicial proceeding because it was
commenced by the FSC pursuant to a "protection order" for the benefit of CCIB and all of its
depositors and other creditors. *See In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)
(a proceeding is collective where such proceeding "considers the rights and obligations of all
creditors" in contrast to a non-collective proceeding, such as a "receivership remedy instigated at
the request, and for the benefit, of a single secured creditor").

55.    The Anguillian Proceeding relates to insolvency or adjustment of debt because the
Administrator has (a) the power to sell or otherwise dispose of CCIB's assets for the benefit of
its creditors under the FSC Act, and (b) the powers of a liquidator under the Companies Act
pursuant to the Second Administration Order. *See* First Administration Order at ¶ 13(c); Second
Administration Order at ¶ 1; Tacon Declaration at ¶¶ 16 and 18; Fontaine Declaration at ¶¶ 16-
18.

56.    A "foreign court" is defined as "a judicial or other authority competent to control
or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3). The High Court is a judicial body
of Anguilla, which has jurisdiction over the Petitioner and the liquidation of CCIB's assets.
Thus, the High Court is a "foreign court" with a supervisory role in the Anguillian Proceeding.

- 16 -

57.    The Anguillian Proceeding is pending in a "foreign country" as it is not a U.S. proceeding.

58.    Based on the foregoing, the Anguillian Proceeding constitutes a "foreign proceeding" as defined in section 101(23), and as referred to in section 1517, of the Bankruptcy Code.

## 2.    The Anguillian Proceeding Is a "Foreign Main Proceeding"

59.    The Anguillian Proceeding is a "foreign main proceeding" as defined by section 1502(4). A "foreign main proceeding" is "a foreign proceeding pending in a country where the debtor has the center of its main interests[.]" *See* 11 U.S.C. § 1502(4) (frequently abbreviated as "COMI"); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests").

60.    The Bankruptcy Code does not define COMI, though "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). The section 1516(c) presumption "permits and encourages fast action in cases where speed may be essential." *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Here, CCIB's registered office—its headquarters—is in The Valley, Anguilla. *See* Tacon Declaration at ¶ 6. Therefore, Anguilla is presumed to be CCIB's COMI under section 1516(c) of the Bankruptcy Code.

61.    Where further inquiry beyond section 1516's presumption is required, bankruptcy courts determine a debtor's COMI "based on its activities at or around the time the Chapter 15 is filed." *Morning Mist Holdings Ltd v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d

Cir. 2013). The Bankruptcy Court for the Southern District of New York has identified certain

factors that may be probative of the determination of a debtor's COMI (the "COMI Factors"):

> the location of the debtor's headquarters; the location of those who
> actually manage the debtor (which, conceivably could be the headquarters
> of a holding company); the location of the debtor's primary assets; the
> location of the majority of the debtor's creditors or of a majority of the
> creditors who would be affected by the case; and/or the jurisdiction whose
> law would apply to most disputes.

*In re SPhinX, Ltd.,* 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *affd,* 371 B.R. 10 (S.D.N.Y.

2007). The Second Circuit has acknowledged the COMI Factors are a nonexclusive list that "is a

helpful guide, but consideration of these specific factors is neither required nor dispositive" and

has warned against mechanical application. *See Fairfield Sentry,* 714 F.3d at 137. The Second

Circuit has underscored the importance of criteria that are both objective and ascertainable to

third parties to determine a debtor's COMI. *Id.* at 136-37. Whether a third party could

objectively ascertain a debtor's COMI may be determined "by examining factors 'in the public

domain.'" *Id.* at 137.

62.    In assessing these "factors in the public domain," a court will look at "activities at

or around the time the Chapter 15 petition is filed[.]" *Id.*

63.    "To offset a debtor's ability to manipulate its [center of main interests], a court

may also look at the time period between initiation of the foreign liquidation proceeding and

filing of the Chapter 15 petition." *Id.* at 134 and 133.

64.    A "court may consider the location of the debtor's 'nerve center,' including from

where the debtor's activities are directed and controlled, in determining a debtor's COMI." *In re*

*Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation and

quotations omitted).

65.     Finally, a court also may consider "international sources of law . . . to underscore the importance of factors that indicate regularity and ascertainability." *Id.* (citation and quotations omitted).

66.     In this case, CCIB's COMI is Anguilla.   Despite some connections to other countries arising from CCIB's "offshore banking," CCIB's operations and nerve center have always been in Anguilla.  Since CCIB's founding, its headquarters were located in Anguilla. *See* Tacon Declaration at ¶ 6.  Although the Administrator is based in London, the Conservator Directors (although not residents or citizens of Anguilla) were all based in Anguilla during their terms of service.[9] *See* Tacon Declaration at ¶ 25.  CCIB is subject to regulation in Anguilla by the FSC (*see* Tacon Declaration at ¶ 9; Fontaine Declaration at ¶ 10), CCIB's parent company, CCB, is based in Anguilla (*see* Tacon Declaration at ¶ 7), and the High Court supervising CCIB's administration and liquidation is in Anguilla.  See Tacon Declaration at ¶ 11; Fontaine Declaration at ¶ 15.

67.     Although CCIB has significant assets in the U.S.—namely, causes of action and Funds that are held in trust for CCIB—its COMI is in Anguilla, which is certainly "ascertainable by third parties." *See Fairfield Sentry*, 714 F.3d at 130.

68.     Accordingly, pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code, the Anguillian Proceeding should be recognized as a "foreign main proceeding."

### 3.     The Petitioner Is a Qualifying Foreign Representative

69.     The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the putative foreign representative applying for recognition must be a "person or body." *See* 11 U.S.C. § 1517(a)(2).  The term "foreign representative" is defined in as:

---

[9] CCIB no longer has any employees. When input is required, it is provided by employees of NCBA.

a person or body, including a person or body appointed on an interim
basis, authorized in a foreign proceeding to administer the reorganization
or the liquidation of the debtor's assets or affairs or to act as a
representative of such foreign proceeding.

11 U.S.C. § 101(24).  "Person" is defined in section 101(41) to include "individuals."  *See*

11 U.S.C. § 101(41).

70.    Here, the Petitioner is an individual, who has been duly appointed by the High

Court to act as Administrator of CCIB with the power to administer the assets of CCIB, whether

for purposes of reorganization, sale, or liquidation pursuant to the Administration Orders.  *See*

First Administration Order at ¶¶ 2-3; Second Administration Order at ¶ 1; Tacon Declaration at

¶¶ 12-18; Fontaine Declaration at ¶¶ 13-14, and 16-18.

71.    Accordingly, the Petitioner satisfies sections 101(24) and 1517(a)(2) of the

Bankruptcy Code.

### 4.    The Chapter 15 Petition Meets the Requirements of Section 1515

72.    The third and final requirement for recognition of a foreign proceeding under

section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural

requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).

73.    Section 1515 requires that: (i) the foreign representative must file a petition for

recognition, *see* 11 U.S.C. § 1515(a); (ii) the petition for recognition must be accompanied by

either (a) "a certified copy of the decision commencing [the] foreign proceeding and appointing

the foreign representative," (b) "a certificate from the foreign court affirming the existence of

[the] foreign proceeding and of the appointment of the foreign representative," *or* (c) if such

evidence is unavailable, "any other evidence acceptable to the Court" demonstrating the

existence of the foreign proceeding and "appointment of the foreign representative," *see* 11

U.S.C. § 1515(b)(1)-(3); and (iii) a statement must be filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative," *see* 11 U.S.C. § 1515(c).

74.     Here, this Chapter 15 case has been commenced by the Petitioner—a foreign representative—by the filing of a Verified Petition. 11 U.S.C. § 1515(a). The Verified Petition is accompanied by notarized, court-stamped copies of the Administration Orders, which demonstrate the commencement of the Anguillian Proceeding and the appointment of the Petitioner as CCIB's Administrator with the power to sell, liquidate, or otherwise dispose of CCIB's assets for the benefit of its creditors. *See* 11 U.S.C. § 1515(b)(2). Further, the Petitioner submits that the First Administration Order, at ¶¶ 2-3, and the Second Administration Order, at ¶ 1, constitute "other evidence" of the Anguillian Proceeding and the appointment of the Petitioner as CCIB's Administrator with the powers of a liquidator. *See* 11 U.S.C. § 1515(b)(3). Finally, the Petitioner has identified the Anguillian Proceeding as the only "foreign proceeding" with respect to CCIB. *See* 11 U.S.C. § 1515(c).

75.     As set forth above, each of the prerequisites to recognition under section 1517 has been met. Accordingly, the Petitioner respectfully requests that the Court recognize (i) the Anguillian Proceeding as a foreign main proceeding and (ii) the Petitioner as CCIB's foreign representative.

**C.      The Petitioner Is Entitled to Relief Under Section 1520**

76.     Upon recognition of the Anguillian Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code prescribes certain forms of relief available to the Petitioner, and respecting CCIB's property within the territorial jurisdiction of the U.S. Such relief is granted automatically as a consequence of recognition, and section 1520 requires no further showing by the Petitioner to obtain such relief.

77.     For example, upon the recognition of a foreign proceeding as a "foreign main proceeding," a foreign representative is automatically entitled to the benefit of the relief conferred under section 1520(a) of the Bankruptcy Code, including, without limitation, the automatic stay imposed pursuant to section 362 of the Bankruptcy Code.  *See* 11 U.S.C. § 1520(a)(1) ("Upon the recognition of a foreign proceeding that is a foreign main proceeding, (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States").

78.     Consequently, upon the recognition by this Court of the Anguillian Proceeding as a "foreign main proceeding," the ancillary recognition of the automatic stay provided under section 362(a) of the Bankruptcy Code in respect of all actions and proceedings against CCIB and its property in the United States is appropriate pursuant to section 1520(a) of the Bankruptcy Code.   As the protections set forth in section 1520(a) are granted automatically from the recognition of a "foreign main proceeding" under section 1517, if the Court recognizes the Anguillian Proceeding as a "foreign main proceeding," the Petitioner respectfully submits that no further showing is required.

### D.     Recognition of the Anguillian Proceeding Is Not Manifestly Contrary to United States' Public Policy.

79.     Recognition of a foreign proceeding is "subject to section 1506" of the Bankruptcy Code, which provides that a bankruptcy court may decline to grant relief requested if the action would be "manifestly contrary to the public policy of the United States."  11 U.S.C. §§ 1506, 1517(a).  The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005).  Furthermore, courts that have addressed the "public policy" exception in section 1506 of the Bankruptcy Code have noted that the exception is narrow, its

application restricted to the most fundamental policies of the U.S., and a foreign judgment should generally be according comity if the foreign jurisdiction's proceedings meet fundamental standards of fairness. *See Collins v. Oilsands Quest Inc.*, 484 B.R. 593, 597 (Bankr. S.D.N.Y. 2012).

80.    Section 1506 has no application here. Like U.S. law, Anguillian law originates from (and is heavily based on) English law. *See* Fontaine Declaration at ¶ 21. Anguillian law is a collective process that recognizes the priority of charges on property (*i.e.*, liens) and provides for *pari passu* treatment of unsecured creditors. *See* Fontaine Declaration at ¶ 21. Anguillian creditors do not receive any priority simply because they are residents of Anguilla. *See* Fontaine Declaration at ¶ 22. Recognizing the Anguillian Proceeding as a "foreign main proceeding" would advance one of the express objectives of Chapter 15; namely, the fair and efficient administration of a cross-border insolvency that protects the interests of all creditors and other interested entities, including a debtor and the protection and maximization of a debtor's assets. *See* 11 U.S.C. § 1501(a).

**E.    Additional Relief Under Section 1521 Is Necessary and Appropriate.**

81.    "[W]here necessary to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief. . . ." 11 U.S.C. § 1521(a). Such relief may include, "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. § 1521(a)(4).

82.    The Petitioner's goal is to preserve and maximize the value of CCIB's assets for the benefit of its depositors and other creditors. This Chapter 15 case was filed to help the Petitioner realize that goal. Accordingly, the Petitioner respectfully requests that it be

- 23 -

empowered to examine witnesses and take evidence or delivery of information concerning CCIB's assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

## NOTICE

83.    Pursuant to Bankruptcy Rule 2002(q)(1), notice of the hearing on the Verified Petition will be provided to (i) CCIB; (ii) the Administrator; and (iii) Honorable William K. Harrington, the U.S. Trustee for the Southern District of New York; and (iv) any other parties, or by any other means, required by this Court, including publication[10] of a notice of the hearing on the Verified Petition in the *Gazette* and by insertion once a week for two consecutive weeks in a newspaper distributed in Anguilla.[11]

84.    The Petitioner submits that no other or further notice need be provided.

## NOTICE OF FOREIGN LAW ISSUES

85.    Pursuant to Federal Rule of Civil Procedure 44.1, as made applicable by Federal Rule of Bankruptcy Procedure 9017, Petitioner hereby gives notice that he intends to raise issues of Anguillan law as set forth above. *See* Fed.R.Civ.P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.    In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.").

---

[10] Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).

[11] Such publication notice is consistent with the manner of publication notice required by a liquidator under section 221(b) of the Companies Act. *See* Companies Act, R.S.A. c C65, at § 221(b) (referring to notice "by publication in the *Gazette* and by insertion once a week for 2 consecutive weeks in a newspaper distributed in Anguilla").

## NOTICE OF INTENT TO FILE CHAPTER 11

86.    Pursuant to section 1511(a)(2) of the Bankruptcy Code, upon recognition of a foreign main proceeding, a foreign representative may commence a voluntary chapter 11 case. *See* 11 U.S.C. § 1511(a)(2).[12]

87.    Pursuant to section 1511(b) of the Bankruptcy Code, a foreign representative must advise the Court where a petition for recognition has been filed of the foreign representative's intent to file a voluntary Chapter 11 case before the foreign representative commences the Chapter 11 case.

88.    This constitutes the Administrator's notice to the Court that, upon recognition of the Anguillian Proceeding as a foreign main proceeding, the Administrator intends to file a voluntary Chapter 11 bankruptcy petition for CCIB.

## NO PRIOR REQUEST

89.    No previous request for the relief requested herein has been made to this or any other Court.

## SATISFACTION OF LOCAL RULE BANKRUPTCY RULE 9013-1(a)

90.    This Motion contains citations to the relevant authorities and, therefore, satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## CONCLUSION

WHEREFORE, the Petitioner respectfully requests that this Court enter an order, substantially in the form of the Proposed Order attached as <u>Exhibit A</u>, (i) recognizing the Anguillian Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code; (ii) recognizing the Petitioner as the "foreign representative" of CCIB as

---

[12] The Chapter 11 petition must be accompanied by a certified copy of an order granting recognition. *See* 11 U.S.C. § 1511(b).

defined in section 101(24) of the Bankruptcy Code; (iii) granting the Petitioner authority—

pursuant to section 1521(a) of the Bankruptcy Code—to examine witnesses, take evidence, and

deliver information concerning CCIB's assets, affairs, rights, obligations, and liabilities; and

(vi) granting such other and further relief as is appropriate.


Dated:  October 11, 2016                    Respectfully submitted:
New York, New York

                                            REED SMITH LLP

                        By:    */s/ James C. McCarroll*
                               James C. McCarroll
                               Jordan W. Siev
                               Kurt F. Gwynne (*pro hac vice* pending)
                               599 Lexington Avenue
                               New York, NY  10022-7650
                               Telephone:  (212) 521-5400
                               Facsimile:  (212) 521-5450
                               Email: jmccarroll@reedsmith.com
                                       jsiev@reedsmith.com
                                       kgwynne@reedsmith.com

                               *Counsel for the Petitioner, William Tacon, in his
                               capacity as Administrator and Foreign
                               Representative*

- 26 -

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| Caribbean Commercial Investment Bank Ltd., | Case No.:  16-12844 (SMB) |
| Debtor. | |

## ORDER GRANTING VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING UNDER CHAPTER 15 AND MOTION IN SUPPORT OF VERIFIED PETITION AND FOR RELATED RELIEF

Upon the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion"),[1] filed by the Petitioner, who is the Administrator and duly-authorized foreign representative for CCIB, and upon consideration of the Tacon Declaration and the Fontaine Declaration; and the Court having determined that the relief sought in the Verified Petition and the Motion is in the best interests of CCIB, its creditors and all parties in interest; and the Court having considered the evidence and statements regarding the Verified Petition in the documents filed with the Court and at the hearing on the Verified Petition and the Motion (the "Hearing"); and the Court having determined that the legal, evidentiary and factual bases set forth in the documents filed with the Court establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these proceedings pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      B.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated January 31, 2012, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.).   The Verified Petition and the Motion constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).   Venue is proper in this District pursuant to 28 U.S.C. § 1410.

      C.     This case was commenced properly pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

      D.     The Verified Petition and the Motion satisfy the requirements of section 1515 of the Bankruptcy Code.

      E.     Notice of the Hearing was in compliance with Bankruptcy Rule 2002(q).

      F.     The Anguillian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

      G.     The Anguillian Proceeding is entitled to recognition by this Court pursuant to sections 1515 and 1517(a) of the Bankruptcy Code.

      H.     CCIB's "center of main interests" is located in Anguilla and, therefore, the Anguillian Proceeding is entitled to recognition as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

      I.     The Petitioner is a "person" as defined in section 101(41) of the Bankruptcy Code and the duly-appointed "foreign representative" of CCIB within the meaning of section 101(24) of the Bankruptcy Code.

J.    The relief sought in the Verified Petition and the Motion is necessary to effectuate the purpose of Chapter 15, and to protect CCIB, its assets, and the interests of its creditors and other parties in interest.

K.    The Petitioner is entitled to the additional relief set forth herein pursuant to section 1521(a)(4) of the Bankruptcy Code.

L.    Notice of the Hearing and the relief requested in the Verified Petition and the Motion at the Hearing was proper, adequate, sufficient and comported with due process under the circumstances, and no other or future notice is or shall be required.

**NOW, THEREFORE**, it is hereby **ORDERED THAT**:

1.    The Verified Petition and the Motion are GRANTED as set forth herein.

2.    All objections and reservations of rights, if any, relating to the Verified Petition and the Motion that have not been withdrawn, waived, or otherwise resolved are overruled and denied.

3.    The Anguillian Proceeding is recognized as a "foreign main proceeding" pursuant to section 1517(b)(1) of the Bankruptcy Code.

4.    The Petitioner is recognized as the "foreign representative" (as defined in section 101(24) of the Bankruptcy Code) of CCIB.

5.    The Petitioner is entitled to conduct discovery, examine witnesses, seek and take evidence, and obtain information concerning CCIB's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

6.    The Petitioner is authorized to take all actions necessary to effectuate the relief granted by this Order without notice or further order of the Court.

- 3 -

7.      This Court retains jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to this Order, its implementation, or otherwise arising from or related to this Chapter 15 case.

8.      This Order shall be effective and enforceable immediately upon its entry.

Dated: _____, 2016
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE